RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE ___11___3_____ 05
BY ____DM_____

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

---

STACEY DENNY

versus

CITY OF MANSFIELD

CIVIL ACTION NO. 04-1053
JUDGE TOM STAGG

---

## MEMORANDUM RULING

Before the court are two motions for summary judgment, one filed by the plaintiff, Stacey Denny ("Denny") and one filed by the defendant, the City of Mansfield ("the City"). See Record Documents 9 and 15. For the reasons set forth below, the City's motion for summary judgment is **GRANTED** and Denny's motion for summary judgment is **DENIED**.

## I. BACKGROUND

Denny is a resident of the City of Mansfield. The lawsuit presently before the court arises from water services provided by the City to the plaintiff and the City's responses to the plaintiff's various complaints about her water service. Essentially, the plaintiff contends that the City provides discolored water to her home which has resulted in discoloration of her appliances, her clothing, and other items in her

1

home. Denny also contends that the City does not appropriately address complaints regarding water issues and does not provide due process prior to terminating water services. Finally, Denny avers that the City's reconnection fee of $35.00 is an unconstitutional taking.

The City provides water service to residents in Mansfield, including the plaintiff. However, the service is billed to her husband. A bill is issued to customers on the last working day of the month, which contains an itemization for the amount owed for water service and the amount owed for sewer service. If payment is not received for water service by the 15th day of the month, then a penalty of $2.00 is assessed to the next monthly bill. Similarly, if a payment is not received for sewer service by the 15th of the month, then an additional penalty of $2.00 is assessed. The bill issued for the next month's water and sewer service includes these penalties. If the prior month's bill has not been paid, the bill also includes a notice stating, "This bill must be paid at once. If not paid by the 10th of the month, your water will be cut off and a $35.00 fee added to your water bill." In the event that a customer has a question or concern regarding his water service, or desires to discuss or dispute a bill, the City authorizes any representative of the water department to address such communications.

In the instant case, Denny complains of discolored water and avers that the

2

discoloration has led to an increase in her water expenses due to the need to flush out her water lines, rewash stained items, and clean stained appliances. After receiving complaints from Denny regarding the discoloration and poor quality of the City's water, the City advised the plaintiff to flush out her water lines to determine if the problem could be resolved. When the problem persisted, the City flushed out the water lines serving the plaintiff's street. Although Denny concedes that the flushing helped, she also states that the problem of discoloration ultimately remains. The City, however, maintains that tests it has performed on the water indicate that the water is both clean and safe, and is in compliance with regulations.

When Denny refused to pay for what she deemed to be inferior water, the City mailed her a termination notice, also adding $2.00 late charges to her account. Eventually, the plaintiff paid the amount due prior to the termination date, but did not pay any accrued late fees. The City then terminated her water service.

Additionally, beginning on or about March 2004, the plaintiff paid her water bill with a check, drawn on Hibernia Bank, which was returned for insufficiency of funds.[1] The plaintiff contends that the City's practice of terminating water service without notice to the customer, following receipt of a bad check, violates due

_____

[1] Plaintiff alleges that this occurrence was due to bank error.

3

process. The City responds that the customer receives notice of the insufficient funds from his own banking institution before the City's water department terminates that customer's water service. Thus, according to the City, the customer has, in fact, been notified that he has not submitted valid payment and should realize that he is subject to disconnection.

Finally, the plaintiff complains of the City's $35.00 reconnection fee, alleging that such a fee is an unconstitutional taking because it is charged regardless of whether the water services were actually terminated.

Denny filed suit in this court, alleging that she has a protected property interest in her water service and maintaining that the City's termination policies deny her due process. <u>See</u> Record Document 1. Thereafter, both parties filed motions for summary judgment. <u>See</u> Record Documents 9 and 15.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

4

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

**B.  Standing.**

The City contends that Denny lacks standing because her name is absent from the utility bill,[2] and she thus "is not a real party in interest." See Record Document 17, Ex. 1 at 10.  Therefore, the City essentially takes the position that simply because the bills are not addressed to the plaintiff, she has no standing to contest potential violations of her due process rights with respect to the water service which

---

[2] Instead, the bill is addressed to her husband, Bryce Denny.

5

is provided by the City to the home she shares with her husband. In taking this position, the City provides no authority to support its legal claims. Indeed, not even a single case is cited in the mere one paragraph dedicated to the standing issue.[3] To complicate matters further, Denny failed to file an opposition to the City's motion for summary judgment, and therefore wholly failed to respond to the standing issue.

However, reviewing the evidence in the record, it is apparent to the court that Denny does, indeed, have standing to bring her claims against the City. The Supreme Court established in Baker v. Carr, 369 U.S. 186, 204, 82 S. Ct. 691, 703 (1962), that a claimant must allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends . . . ." Without proper standing, a federal court lacks jurisdiction to hear the case the parties have brought before it. Schlesinger v. Reservists Comm. To Stop The War, 418 U.S. 208, 215, 94 S. Ct. 2925, 2929 (1974); see also Int'l Ass'n of Machinists and Aerospace Workers Local Lodge 2121 AFL-CIO v. Goodrich Corp., 410 F.3d 204, 211 (5th Cir. 2005). The requirement of a personal stake ensures that the party "see king to adjudicate his claim [i]s the 'proper party' to present the claim 'in an adversary context and

---

[3] It is not this court's obligation to research and present the claims that each party desires to advance in its motion for summary judgment.

in a form historically viewed as capable of judicial resolution.'" Schlesinger, 418 U.S. at 218, 94 S. Ct. at 2930 (quoting Flast v. Cohen, 392 U.S. 83, 100-01, 88 S. Ct. 1942, 1953 (1968)).

In order to establish standing, the plaintiff must (1) demonstrate an injury that is neither hypothetical or merely speculative, (2) establish causation between the injury and the alleged conduct at issue, and (3) claim an injury that will likely be redressed by a favorable decision. See Lincoln v. Case, 340 F.3d 283, 289 (5th Cir. 2003); see also Grant ex rel Family Eldercare v. Gilbert, 324 F.3d 383, 387 (5th Cir. 2003). Here, Denny has established that she suffered an actual injury not only with respect to the termination of her water services, but also in the paying of the $35.00 reconnection fee. The record clearly demonstrates that she has a personal stake in the outcome of the dispute, in that she lives in the house being serviced by the defendant, pays the charges accrued for services rendered by the defendant, and has become involved with the City in a long-standing dispute over the quality of water it provides to her home. The mere fact that the utility bill is not addressed to "Stacey Denny" is irrelevant, as she has established that, in all other facets, she is a party in interest and has standing to bring suit.

## C. Due Process Analysis.

Denny claims that the City's water termination policies violate the Due Process clause of the Fourteenth Amendment, in that she was afforded neither notice or a hearing. She principally relies upon Memphis Light, Gas, and Water Division v. Craft, 436 U.S. 1, 98 S. Ct. 1554 (1978), which found that a municipal utility's water termination policies violated the Due Process clause when it disconnected water service for nonpayment of charges without providing either notice of the termination or a hearing on the issue. The Craft Court concluded that when state law prohibits termination of service at will, and thus only allows disconnection for cause, a customer has a legitimate claim of entitlement under the Due Process clause. Craft, 436 U.S. at 11-12, 98 S. Ct. at 1561. As such, the municipal customers in Craft were entitled to the due process mandates of notice and a hearing before any termination procedures were instituted. Id. at 18, 98 S. Ct. at 1565.

To come within the protection of the Due Process clause, the plaintiff must assert a "legitimate claim of entitlement" to a property interest. Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972). These property interests can be created by state law. See id. In Craft, the Court held that because Tennessee jurisprudence established that utilities could not terminate service except for cause,

the plaintiffs were able to assert a legitimate claim of entitlement. See 436 U.S. at 11, 98 S. Ct. at 1561. By proscribing at will terminations and requiring a valid cause and a hearing prior to disconnection of services, Tennessee law had created a property interest in continuous utility service. Craft, 436 U.S. at 11, 98 S. Ct. at 1561.

In the instant case, Denny claims a right to continuous water service provided by the City. As such, she claims that she had a due process right to notice and a hearing prior to the disconnection of her water services. To determine whether Denny had a legitimate claim of entitlement to water service and, if so, whether the City violated the Due Process clause by using constitutionally defective notice and hearing procedures, this court must undertake a two-step analysis. First, it must determine whether Louisiana law creates a legitimate claim of entitlement to continuous water service. If Louisiana law does provide the plaintiff with a recognized interest in her water service, then this court must next determine whether the City provided her with constitutionally adequate notice and a hearing prior to terminating her service.

### 1. Existence Of A Constitutionally Protected Interest.

After examining Louisiana law, it appears that the plaintiff did, in fact, have

a legitimate expectation of continuous water service. Louisiana Revised Statute 33:3822 vests in the "governing authority of any parish, municipality, or waterworks district . . . full power and authority . . . to establish, acquire, construct, improve, extend and maintain within said political subdivision a waterworks system or systems . . . ." La. R.S. 33:3822. Furthermore, La. R.S. 33:4169 authorizes a collection procedure by which water service may be disconnected due to either delinquent water charges or delinquent sewer charges. Similarly, although not governing authority for a public utility owned or operated by a political subdivision like the City, the Louisiana Public Service Commission's Guidelines and Requirements for Water and Sewerage Companies set forth disconnection procedures with regard to delinquent accounts only, which seemingly implies that disconnection for non-payment is the only circumstance in which unilateral disconnection by the utility company is permitted.[4] Therefore, under

---

[4] Article 4, § 21(B) of the Louisiana Constitution provides the Commission with regulatory authority over all common carriers and public utilities. La. Const. Art. 4, § 21(B). However, this power is limited by Article 4, § 21(C) which restricts the Commission's authority over utilities that are owned, operated, or regulated by a political subdivision. La. Const. Art. 4, § 21(C). Accordingly, under these provisions, a utility owned by a political subdivision is exempt from the Commission's authority. See Cajun Elec. Power v. Public Serv. Comm'n, 544 So.2d 362 (La. 1989). Although the Commission's guidelines are not governing authority in this instance as the City is exempt from its jurisdiction, this court finds that the guidelines are nonetheless helpful in determining whether the State of

Louisiana statutory authority and the guidelines promulgated by the Louisiana Public Service Commission, a utility has no right to terminate at will. On the contrary, the bases for disconnection are clearly set forth, which necessarily implies that disconnection is only permitted for cause. Thus, the City does not enjoy the right to terminate utility services at will, but instead must support all of its disconnections with a reasonable justification. Accordingly, because utility companies cannot perform at will disconnections, utility customers enjoy a legitimate expectation of continuous water service, absent a delinquent account.[5]

## 2. *Due Process Requirements And The City's Termination Procedures.*

Because the plaintiff has a right to continued water service, the Fourteenth Amendment requires that she be afforded due process before that service can be terminated. In Craft, the Court held that the notice given to customers and the lack of an administrative procedure for entertaining customer complaints prior to termination violated procedural due process requirements. See Craft, 436 U.S. at 14, 98 S. Ct. at 1563, 1564. The Court found that notice "does not comport with

---

Louisiana intended to permit at will terminations.

[5] Finding a legitimate claim of entitlement to continuous water service, this court need not reach the question of whether Denny had a statutory contractual claim to water service.

11

constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified." 436 U.S. at 15, 98 S. Ct. at 1563. Thus, notice under Craft requires "(i) notice informing the customer not only of the possibility of termination but also of a procedure for challenging a disputed bill . . . and (ii) [an] established [procedure] for resolution of disputes or some specified avenue of relief for customers who dispute the existence of the liability." Id. at 12, 98 S. Ct. at 1562 (internal quotations omitted).

### A. Notice.

A fundamental axiom of due process is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950). In the instant suit, the final notice sent by the City consisted of the following warning, stamped in red ink over the bill: "This bill must be paid at once. If not paid by the 10th of the month, your water will be cut off and a $35.00 fee added to your water bill." Therefore, this notice only warned customers to pay on their delinquent accounts or else they would face disconnection and incur a $35.00 penalty. The notice wholly failed to

include any provision regarding a procedure available for disputing the bill. Thus, while the City's bill may provide notice with respect to a potential termination of service and may also provide a reasonable amount of time within which a customer may pay a delinquent bill, it is constitutionally deficient because it fails to inform the customer of the procedures available to dispute his bill. See Craft, 436 U.S. at 14, 98 S. Ct. at 1563.

Indeed, such notice is a constitutional requirement under the Due Process clause. "[D]ue process requires the provision of an opportunity for the presentation to a designated employee of a customer's complaint that he is being overcharged or charged for services not rendered." Craft, 436 U.S. at 16, 98 S. Ct. at 1564. "Lay consumers of electric service, the uninterrupted continuity of which is essential to health and safety, should be informed clearly of the availability of an opportunity to present their complaint. In essence, recipients of a cutoff notice should be told where, during which hours of the day, and before whom disputed bills appropriately may be considered." Id. at 15 n.15, 98 S. Ct. at 1563 n.15. Thus, the notice utilized by the City falls short of the standard mandated by Craft.

### B. Opportunity For A Hearing.

Some type of hearing "is required at some time before a person is finally

deprived of his property interests." Wolff v. McDonnell, 418 U.S. 539, 557-558, 94 S. Ct. 2963, 2975 (1974). Under Craft, a utility company is required to have a provision in place affording customers an opportunity to meet with a utility representative who is empowered to remedy billing disputes. Craft, 436 U.S. at 16, 98 S. Ct. at 1564. Craft does not necessarily require a formal hearing or proceeding. Rather, an informal consultation may suffice in certain situations. Id. at 16 n. 17, 98 S. Ct. at 1564 n. 17.

In the instant case, neither party submitted information regarding the customary hearing opportunities provided to the City's utility customers.[6] Therefore, it is impossible to discern from the record whether the City comports with due process requirements in this respect. Nevertheless, the record reflects that prior to the termination of Denny's water service, she and her husband disputed the quality of their water service, thereby conferring with City representatives on numerous

---

[6] Defendant maintains that it "provides a procedure for customers to communicate to representatives of the billing department regarding any issues, disputes or other questions regarding the bill for water and sewer" and that it "provide[s] a representative of the water department to evaluate claims and disputes and to make changes to be made to a billing." See Record Document 15, Ex. 3 at 2. Other than these bald assertions and statements to the same effect in the affidavit of two city employees, see Record Documents 22 and 23, the defendant provides no further or specific information regarding the procedures it claims to provide nor any information regarding the way in which customers are to contact the City's representatives to dispute a bill.

occasions. Such communications demonstrate that the plaintiff knew the manner in which to dispute her bill. The hearings afforded to Denny, albeit informal in nature, presented her with the opportunity to meet with utility representatives who were empowered to remedy billing disputes.

The record indicates that the dispute over the water quality occurred over the past several years and that, during this time period, the plaintiff and her husband were in contact with the water department on several occasions regarding the water bills. The plaintiff admits that she and her husband "complaine d about the water color quality and asked the City to make adjustments to their bill," and that, in response to one discussion between the plaintiff and the City, "the City promised us a $10 credit on our bill to compensate us for water lost through flushing." Record Document 9, Ex. 2 at 2 and Ex. 3 at 2. Further, regarding the plaintiff's dispute over the $35.00 reconnection fee charged by the City, the plaintiff's husband (also her counsel) states that he

> tried to purposely get the City to charge the $35 . . . to confirm the [City's] practice. The first time, the City wisely did not do it after counsel argued with the City employee accepting the payment when she tried to collect the $35. The second time, the City required plaintiff to pay the $35, asserting that it was a "late fee." However, the bill already indicates that there is a $2 late fee. While $35 may be reasonable when the City has had to send someone out to physically shut off the water, it is not when the City has not incurred any expense

related to shutting off service.

Record Document 9, Ex. 2 at 10.

These admissions, along with numerous others,[7] indicate that Denny was provided numerous hearings with respect to her water complaints and billing disputes. More importantly, such admissions indicate that she knew the manner in which to dispute a bill and the manner in which to resolve customer complaints. Indeed, she had used this knowledge in the past to present challenges to the water department. Therefore, although the City did not affirmatively notify the plaintiff of

---

[7] The court takes judicial notice of the fact that Mansfield is not a large metropolitan entity and that contact between citizens and the City is not inconvenient or burdensome. The deposition of Bryce Denny, the plaintiff's husband, reveals that the Dennys frequently communicated with the City. For instance, on one occasion, the City sent its employees to check on the Denny's water supply in response to complaints from the plaintiff and her husband. See Record Document 17, Ex. D-4 at 19, lines 15-22. These same employees provided the Dennys with a phone number so that they could notify the City of their concerns. See id. at lines 10-11. Furthermore, Mr. Denny concedes that he and his wife had several communications with the City after the City's initial visit to the house. See id. at 20, lines 21-24. Mr. Denny's deposition also reveals that he was fully aware of the manner in which to contest a billing dispute. Indeed, when not provided with the $10 credit as promised by the City, Mr. Denny states that he "called the City about why we didn't get the credit on the water bill and requesting [sic] a credit because of the brown water, and then I had an e-mail exchange with the City Clerk . . . ." See Record Document 17, Ex. D-4 at 22, lines 4-7. Mr. Denny was also able to voice complaints to two critical City employees, City Clerk Wesley Dunn and Water Department Head Jim Ruffin. See id. at 22, lines 14-18, and 23, lines 2-6 (stating that "I believed I called . . . basically saying I am tired of paying for brown water at full price and I don't want to pay it anymore.").

the procedures available for challenging her water bills or obtaining a hearing on the matter, Denny had previously been put on notice through her frequent interactions with the City. In other words, the numerous challenges she brought against the water department prior to the alleged due process violation at issue cured the City's constitutionally defective disconnection procedures.

In sum, the termination procedures used by the City are constitutionally infirm because they fail to satisfy the requirements of the Due Process clause. However, the plaintiff in the instant case was sufficiently put on notice of the availability of challenge and hearing procedures, therefore the mandates of the Due Process clause have been fulfilled.

## C. Disconnection Following Receipt Of A Dishonored Instrument.

Denny claims that the City's practice, upon receipt of a dishonored instrument, is to terminate the customer's water service without first providing notice or a hearing to the customer. This procedure, she contends, denies the customer due process. The principal difference between this issue and the plaintiff's primary due process claim is that the notice normally provided to a delinquent customer[8] is absent in bad check circumstances. Indeed, the City concedes that it

---

[8] See supra Part II(C)(2)(A).

provides no notice of disconnection to a customer who has paid with a dishonored check.

Nevertheless, Denny's complaint contains no indication that she had an issue with the City's termination procedures in bad check situations. Indeed, Denny's complaint fails to even mention any facts with respect to a dishonored check. To comply with Federal Rule of Civil Procedure 8(a)(2), the plaintiff's claim must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A claim will be deemed sufficient if it provides the defendant with "fair notice of what the claim is and the grounds upon which it rests." Frito-Lay, Inc. v. WAPCO Constructors, Inc., 520 F.Supp. 186, 188 (M.D.La. 1981). Indeed, a complaint which "contains a bare bones allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice." Walker v. South Cent. Bell Tele. Co., 904 F.2d 275, 277 (5th Cir. 1990). Rule 8(a) is intended to give the opposing party fair notice that such a claim exists. Askanase v. Fatjo, 148 F.R.D. 570, 573 (S.D.Tx 1993). "Even the liberal notice pleading allowed by the federal rules requires a pleading to include the operative facts upon which the pleader bases his claim." Id. In order to comply with the fair notice mandates of the federal rules, the plaintiff's claim must

include "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." Id. (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984).

Although Denny now raises a due process claim regarding the termination of her water service after she paid the City with a dishonored check, she failed to even allude to this issue in her complaint. Rather, she raised the bad check issue for the first time in her motion for summary judgment. See Record Document 9. Thus, with respect to this charge, Denny failed to comply with the requirements of Rule 8(a). Indeed, in this particular due process allegation, the facts alleged by the plaintiff in the complaint (which have nothing to do with a dishonored check) fall far short of meeting the fair notice standard. In short, the City was not put on notice that an issue existed with respect to its check return policy until it was served with Denny's motion for summary judgment. Accordingly, Denny's inadequate pleading on this ground simply cannot support recovery.[9]

---

[9] Although Denny's failure to comply with Rule 8(a) supports dismissal of this claim, this court notes that the City's policy on this issue is not only troublesome, but is in violation of Craft. The City's response to Denny's allegations is that, although it does not provide the customer with notice of service disconnection, the customer should have already been put on notice by her banking institution, which apparently should notify the customer that she possessed insufficient funds to support the issued instrument. However, Craft demands that a municipal utility provide notice of termination, along with a hearing on the issue.

## D. Takings Clause.

Denny contends that the City violates the takings clause by charging a $35.00 reconnection fee to a delinquent customer, regardless of whether that customer's service was disconnected. The Fifth Amendment provides that the government cannot take private property for public use without providing just compensation. <u>See</u> U.S. Const. amend. V. The Fifth Amendment does not prohibit the taking of property, but merely proscribes the taking of property without providing just compensation. <u>Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.</u>, 452 U.S. 264, 297 n.40, 101 S. Ct. 2352, 2371 n.40 (1981) "Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking."

---

See <u>Craft</u>, 436 U.S. at 18, 98 S. Ct. at 1565. Anything short of this would violate due process. Therefore, the City simply cannot rely on a banking institution to fulfill the notice requirements imposed on it by the Constitution itself. It cannot shirk its duties and merely hope that the bank does indeed notify the utility's customer that a bad check has been issued. The burden of notifying a customer of improper payment, if it is to result in a consequence as severe as disconnection, rests solely with the City. If proper notice is not provided to a customer prior to disconnection, the due process violation lies solely with the City, not the banking institution. In short, the City's current policy of providing no notice of disconnection to the customer in bad check circumstances is a violation of due process under <u>Craft</u>. Cf. <u>Bradford v. Edelstein</u>, 467 F.Supp. 1361 (S.D.Tx. 1979).

Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194, 105 S. Ct. 3108, 3120 (1985)(internal quotations omitted). In Williamson County, the Supreme Court held that a federal takings claim is not ripe until just compensation is denied. In order to have a ripe federal takings claim, the claimant must first exhaust state compensation remedies. Id. at 195, 105 S. Ct. at 3121; see Vulcan Materials Co., v. City of Tehuacana, 238 F.3d 382, 385 (5th Cir. 2001).

Here, Denny provides no indication as to whether her takings claim is a state claim or whether it exists under federal law. However, because she has failed to exhaust state compensation remedies and thus has no ripe federal claim in any event, this court will construe her takings claim as existing under state law. Distressingly, in both the plaintiff's complaint and in her motion for summary judgment, her factual allegations on this issue lack clear articulation, while the legal support cited is scant, to say the least. The defendant does not object to the plaintiff's inartful pleading and conclusory statements, but rather responds on the merits with a mere one paragraph statement to the effect that the $35.00 fee is not a taking, but rather is an appropriate administrative fee. Neither party cites any persuasive authority, or essentially, any relevant authority at all, that would assist the court in determining

this issue on the merits.

In the instant case, the burden is on Denny to demonstrate that there exists a genuine issue of material fact such that a trial is warranted. Indeed, under Celotex, because Denny is the party bearing the burden at trial, her summary judgment showing must demonstrate not only the absence of a material factual dispute but she also must sustain the burden of persuasion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2554 (1986). Here, however, she has failed to carry these burdens in that she has neglected to adequately articulate any factual underpinnings or legal authority to survive summary judgment. Denny has failed to demonstrate to this court (1) why the $35.00 fee is unreasonable, in light of the City's assertion that the fee is an appropriate administrative fee and (2) any other persuasive authority that has held a similar fee to be unreasonable. In fact, not only has Denny failed to provide authoritative support finding an analogous fee unreasonable, she has failed to cite any authority whatsoever that has held any fee of any type to be unreasonable.[10] Denny's bare assertions that the $35.00 fee is an

_____

[10] Without a doubt, other federal courts have found certain fees to be unreasonable under certain circumstances, but Denny fails to point the court in the direction of any authority holding such and further wholly fails to draw any similarities between those cases and her own. It is not the duty of this court to research and substantiate the plaintiff's case for her.

unconstitutional taking, absent further factual and legal support, are simply insufficient to bear her burden.

### III. CONCLUSION

Based on the foregoing analysis, the City's motion for summary judgment is **GRANTED** and Denny's motion for summary judgment is **DENIED**. <u>See</u> Record Documents 9 and 15. All claims by the plaintiff against the defendant are **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 2nd day of November, 2005.

JUDGE TOM STAGG